IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 96 CR 815-4 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| ALEX D. RAMOS, | ) ) ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the Statement below, Defendant Ramos's Motion for Reduced Sentence [984] is denied. The Clerk is directed to remove the pending motion icon from docket entries [990] and [992], which are not motions.

## STATEMENT

Defendant Alex Ramos was sentenced to 592 months—more than 49 years—in prison following convictions based on racketeering, drug trafficking, and firearms charges arising from protection that Ramos, a Chicago police officer, provided to drug traffickers (who were actually undercover law enforcement officers).[1] Most relevant to this motion, Ramos was convicted of two violations of 18 U.S.C. § 924(c) and, consistent with the statutory requirements then in effect, was sentenced to a total of 30 years consecutive to the sentences imposed on the racketeering and drug trafficking counts. One of the § 924(c) convictions earned Mr. Ramos a mandatory minimum consecutive sentence of five years and the second carried a mandatory minimum consecutive sentence of twenty-five years.

For the second time, Defendant Ramos has moved for a sentence reduction pursuant to 18 U.S.C. 3582(c)(1)(A)(i), commonly known as the compassionate release provision. In his first motion, Ramos argued that a change in the law governing sentence enhancements for multiple convictions under 18 U.S.C. 924(c) created an "extraordinary and compelling" basis to reduce his sentence. Specifically, Ramos invoked Section 403 of the First Step Act, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22, which reduced the mandatory minimum penalty for a second conviction under § 924(c) from a consecutive term of twenty-five years to a consecutive term of five years, unless the first § 924(c) conviction arose from a separate case and became final before the second conviction. See § 403, 132 Stat. at 5221–22 (the "anti-stacking amendment"). Had Mr.

---

[1] Mr. Ramos's sentence was subsequently reduced to 545 months pursuant to 18 U.S.C. § 3582(c)(2) after the sentencing guidelines for certain narcotics offenses were reduced retroactively. Dkt. 860.

Ramos been sentenced after the First Step Act amended the § 924(c) penalties, his sentence could have been up to 20 years shorter.

This Court denied Mr. Ramos' first motion based on the Seventh Circuit's holding in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021). In *Thacker*, the Seventh Circuit held that the First Step Act's amendment to § 924(c) "cannot constitute an 'extraordinary and compelling' reason to authorize a sentencing reduction." *Id.* at 571. The Court of Appeals explained that the anti-stacking amendment was plainly intended to be prospective only. *Id* at 573 ("there is no other way to read" the amendment).[2] And because Mr. Ramos was sentenced long before § 924(c) was amended, he could not invoke that change in the law as an "extraordinary and compelling" basis for release; doing so would have enabled an "end-run around Congress's decision in the First Step Act to give only prospective effect to its amendment of § 924(c)'s sentencing scheme." *Id*. at 574.[3]

The Seventh Circuit affirmed the denial of Mr. Ramos' sentence reduction motion. *United States v. Ramos*, No. 21-2668, 2021 WL 6103008, at *1 (7th Cir. Nov. 1, 2021). The appellate court confirmed that this Court "lacked authority to grant compassionate release based solely on the amendment under our decision in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021)," and so had properly denied the motion. *Id.* The Court of Appeals also acknowledged that there was a circuit split on this question but sided with Sixth and Eighth Circuits, finding the contrary views of the Fourth and Tenth Circuits to be unpersuasive.

In his current motion, Mr. Ramos contends that this Court now has authority to grant compassionate release based on the § 924(c) amendment by virtue of a post-*Thacker* amendment to the policy statement promulgated by the Sentencing Commission with respect to "what should be considered extraordinary and compelling reasons for sentence reduction . . . ." 28 U.S..C. § 994(t).[4] As of November 1, 2023, the Sentencing Commission amended its policy statement to

---

[2] Subsection (b) of Section 403 provides that "the amendments made by this section[], shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

[3] The Seventh Circuit has reaffirmed Thacker's holding a number of times. *See United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (compassionate release reduction cannot be based on grounds the defendant could have advanced on direct appeal); *United States v. Brock*, 39 F.4th 462 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing a new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction."); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("there's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.").

---

[4] Until the Commission issued this policy statement regarding the implementation of compassionate release motions filed by prisoners, the Commission's policy statement regarding extraordinary and compelling grounds for sentence reductions did not address changes in the law and in any event applied only to motions filed by the Bureau of Prisons. *See United States v. Gunn*, 980 F.3d 1178, 1179–80 (7th Cir. 2020).

2

allow retroactive consideration of changes in law under certain circumstances. The amended policy states in relevant part:

> (b) EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> * * * *
>
> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, *a change in the law* (other than an amendment to the Guidelines Manual that has not been made retroactive) *may be considered in determining whether the defendant presents an extraordinary and compelling reason*, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (2023) (emphasis added) ("(b)(6) amendment").[5] It is clear that in adopting this amended policy statement, the Sentencing Commission rejected *Thacker*'s holding that nonretroactive sentencing amendments, including the First Step Act's amendment to the enhanced sentencing provisions of § 924(c), cannot constitute or contribute to extraordinary and compelling reasons to reduce a defendant's sentence under § 3582(c)(1)(A)(I).[6] Mr. Ramos contends that this post-*Thacker* policy statement trumps *Thacker*'s holding that non-retroactive changes in the law cannot be deemed "extraordinary and compelling" circumstances that permit district courts to reduce sentences. The government maintains, however, that in enacting the (b)(6) amendment, the Sentencing Commission exceeded its authority by undermining the statutory minimum penalties Congress had enacted and preserved by making the anti-stacking amendment prospective only. Thus, the question becomes whether the amended policy statement trumps *Thacker*.

---

[5] The Third Circuit observed in *United States v. Rutherford*, No. 23-1904, 2024 WL 4645583, at *14 (3d Cir. Nov. 1, 2024) that the enactment of the amended policy statement was "not without controversy," noting that the Commission adopted the amendment by a 4-3 vote and that the three dissenting members delivered a joint statement opposing the amendment because, in their view, the policy statement "goes further than the Commission's legal authority extends[,]" because "[i]n practical effect, it provides a second look to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive."

[6] See the Commission's commentary accompanying its announcement of these revisions. 85 Fed. Reg. 28254, 28258-59 (May 3, 2023) (noting the circuit split and "agree[ing] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction").

3

The Seventh Circuit has not yet had occasion to address this issue, but in this Court's view, the answer is that it does not. *Thacker* remains the controlling law governing the question of whether the non-retroactive amendment to § 924(c) constitutes an extraordinary and compelling basis to grant a sentence reduction under 18 U.S.C. § 3582(a)(1)(A)(i). *Thacker*'s rationale applies with equal force after the (b)(6) amendment. As the Seventh Circuit explained in *Thacker*, section 403 is unambiguous: "Congress made plain in § 403(b) of the First Step Act that . . . the First Step Act's anti-stacking amendment applies prospectively." *Thacker*, 4 F.4th at 573. But that temporal limitation would be meaningless if courts were free to reduce sentences that were lawfully imposed before the anti-stacking amendment was enacted. "Interpreting § 403 to apply retroactively would unwind and disregard Congress's clear direction that the amendment apply prospectively." *Id*. As the Third Circuit has observed, interpreting "Congress's nonretroactivity directive [in the First Step Act] as simultaneously creating an extraordinary and compelling reason for early release" makes no sense. *United States v. Rutherford,* --- F.4th ---, 2024 WL 4645583, *8 (3d Cir. Nov. 1, 2024). "It would be inconsistent with the pertinent provisions of the First Step Act . . . to allow the amended version of § 924(c) to be considered in the compassionate release context because Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *Id.* at *12 (cleaned up).

Relatedly, and as the Seventh Circuit also pointed out in *Thacker*, 4 F.4th at 574, allowing sentence reductions based on changes in law would threaten to upend the prevailing process for obtaining post-conviction sentencing relief—namely, by motion pursuant to 28 U.S.C. § 2255. That statute expressly limits post-conviction relief to a single opportunity, absent newly discovered evidence (a ground not implicated here) or "a new rule of constitutional law, **made retroactive** to cases on collateral review **by the Supreme Court** . . . ." 28 U.S.C. § 2255(h) (emphasis added). It is difficult to square this limitation with the Sentencing Commission's view that Congress gave it the authority to issue a "policy statement" that would allow post-conviction sentence reduction motions premised on new law that Congress expressly declared to be **non-retroactive**.

Mr. Ramos contends that *Thacker* does not foreclose relief "since the Sentencing Commission promulgated a definition of extraordinary and compelling reasons that explicitly rejected *Thacker*." Motion at 9. But notably absent from his argument is any basis to conclude that by authorizing sentence reductions for "extraordinary and compelling" reasons, Congress intended to abrogate its statutory command that the amendment to § 924(c) would apply prospectively only.[7] To the contrary, and as the Seventh Circuit observed in *Thacker*, Congress knew how to make retroactive amendments to the First Step Act—it did so expressly in eliminating mandatory

---

[7] Mr. Ramos has argued that because Congress did not prevent the 2023 amendments to the Sentencing Guidelines from taking effect, it must have approved of the (b)(6) amendment. "Any argument that Congress affirmatively endorsed the Commission making subsection (b)(6) retroactively applicable," however, "is illusory. While the Commission submitted the amendments to the policy statement in § 1B1.13 to Congress, this was not required under the statutory scheme of § 994. *See* 28 U.S.C. § 994(p). And, while 'Congress allowed these amendments to go into effect without modification,' courts must 'resist reading congressional intent into congressional inaction.' *Carter*, —— F. Supp. 3d —— , 2024 WL 136777, at *7 (quoting *Kimbrough v. United States*, 552 U.S. 85, 106 (2007))." *United States v. O'Neill*, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102, *18 (E.D. Wis. May 23, 2024).

minimum sentences for simple possession and increasing the threshold quantity of crack cocaine necessary to trigger mandatory penalties. *Thacker*, 4 F.4th at 573 ("There is no way to read [Congress's choice to apply the § 924(c) amendment prospectively only] as anything other than deliberate" in light of the fact that it made some of the First Step amendments retroactive.

To the extent that Mr. Ramos contends that courts must defer to the Sentencing Commission's view that "extraordinary and compelling" grounds for a sentencing reduction include the need to mitigate sentence disparities between defendants convicted of multiple § 924(c) before and after enactment of the First Step Act, he is mistaken. As the Third Circuit recently explained in *Rutherford*, in promulgating policy statements, the Commission "'must bow to the specific directives of Congress' and accurately reflect Congressional intent when it fulfills its responsibilities." 2024 WL 4645583 at *11 (quoting *United States v. LaBonte*, 520 U.S. 751, 757 (1997). That is the import of 28 U.S.C. § 994(a), which requires that the Commission's policy statements (and all other actions) be "consistent with all pertinent provisions of any Federal statute." Thus "[w]hatever else the Commission may be empowered to do, it plainly may not replace a controlling judicial interpretation of an *unambiguous* statute with its own construction (even if that construction is based on agency expertise)[.] And on retroactivity, the change to § 924(c) is not the least ambiguous. Congress made the change non-retroactive. No matter how well-intentioned, the Policy Statement cannot change that." *Rutherford*, 2024 WL 4645583 at *13.

Courts owe no deference to a Commission policy—like the (b)(6) amendment—that contravenes the plain text of a statute. Rather, "[i]t is the job of the courts to ensure that the Commission's amendments to its policy statements do not go beyond what Congress intended." *Id.* at *11. Any doubt on this score was put to rest earlier this year when the Supreme Court overturned the long-standing rule that courts must defer to agency interpretations of statutes within an agency's expertise. "In *Loper Bright Enterprises v. Raimondo*, the Court said such so-called *Chevron* deference was the 'antithesis' of 'the traditional conception of the judicial function[,]' especially when 'it forces courts to [defer] even when a pre-existing judicial precedent holds that the statute means something else – unless the prior court happened to also say that the statute is 'unambiguous.'" *Id.* at 144 S. Ct. 2244, 2263, 2265 (2024).[8] *Loper* confirmed that "agency interpretations of statutes . . . are *not* entitled to deference. Under the APA, it thus "remains the responsibility of the court to decide whether the law means what the agency says." 144 S. Ct. at 2261 (emphasis in original).

And here, preexisting and binding judicial precedent—that is, *Thacker* and its progeny—holds that the term "extraordinary and compelling" as used in § 3582(c) does mean something other than what the Sentencing Commission says—specifically, that the term does not encompass the non-retroactive change effected by the § 924(c) amendment.

Because the amendment to § 924(c) applies prospectively only, the Court agrees with the Government that the Sentencing Commission exceeded its authority in implementing the (b)(6) amendment. That amendment is intended to afford courts with discretion to reduce lengthy sentences resulting from the § 924(c) stacking requirements that prevailed before the First Step

---

[8] The Sentencing Commission is not an agency, per se, but *Loper*'s logic and import are highly relevant and persuasive in this context, too.

5

Act amendment, but it cannot do so by abrogating Congress's express directive that the anti-stacking amendment may not be applied retroactively. *Thacker* made it clear that "the discretionary authority conferred by § 3582(c)(1)(A) only goes so far. It cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively." *Thacker*, 4 F.4th at 574. This was the law when the Seventh Circuit decided *Thacker* and remains so today.[9]

Accordingly, Mr. Ramos' motion for a sentence reduction pursuant to § 3582(c)(1)(A)(i) is denied.

Date: November 6, 2024          /s/ John J. Tharp, Jr.
                                John J. Tharp, Jr.
                                United States District Judge

---

[9] Most of the district courts in the Seventh Circuit that have addressed the conflict between *Thacker* and the (b)(6) amendment have agreed that *Thacker* and its progeny control this issue and that § 1B1.13(b)(6) is invalid insofar as it purports to allow the 924(c) amendment to serve as a basis for a sentence reduction under § 3582(c). *See, e.g., United States v. Black*, 715 F. Supp. 3d 1069, 1079 (N.D. Ill. 2024) ("The Court reads Seventh Circuit precedent to forbid interpreting § 3582(c)(1)(A) to permit a nonretroactive sentencing amendment to constitute or contribute to 'extraordinary and compelling reasons' for a sentence reduction, so the Court is bound to reject [defendant's] argument."); *United States v. O'Neill*, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102, *22 (E.D. Wis. May 23, 2024) ("§ 1B1.13(b)(6) is manifestly contrary to the statutory scheme set forth in § 994(t) and § 3582(c)(1)(A), and . . . the Commission exceeded its statutory authority by adding the subsection"); *United States v. Williams*, No. 06-CR-20032-JES-2, 2024 WL 3567498, at *7 (C.D. Ill. July 29, 2024) ("§ 1.13(b)(6) is not binding as it was promulgated outside the Commission's grant of authority"); *United States v. Duncan*, No. 3:03-CR-57 JD, 2024 WL 4471420, at *7 (N.D. Ind. Oct. 11, 2024) (collecting cases).